McIlvaine, J.,
dissenting: The following are the only propositions of law involved in the decision of this case, and, in my opinion, the judgment below should be affirmed.
1. A right of way appropriated by a railroad company, *248 as necessary for the use 0/ its railroad, is transferable to another company for like uses.
2. The transferee company is entitled, as against the owner in fee, to all the rights, privileges, and immunities acquired by the appropriating company.
3. The right to impose burdens upon the land appropriated is subject to the same limitations in the posession of the transferee as of the appropriating company; on the other hand, the right to impose burdens on the land passes to the transferee to the full extent possessed by the appropriating company.
4. The right to transfer the entire right of way, with all tbe privileges acquired by the condemnation, includes the right to permit and license another railroad company to occupy for the use of its road a part of the right of way.
5. The use of such part by the licensee in the same manner it could have been used by the licensor is not an addiditional burden on the land for which the owner in fee is entitled to additional compensation.
6. The quantity of land embraced in the right of way is fixed and determined, as between the parties, by the judgment of condemnation.
7. The non-user of those portions of the right of way, at the sides of the track of the road, is not an abandonment thereof to the owner in fee.
Thefirst and main proposition is admitted tohe the law by the majority of the court in the decision of this case. It is so declared by the courts of most of the states of this Union, and by none more0 emphatically than by the supreme court of Ohio. In the Junction Railroad Co. v. Ruggles, 7 Ohio St. 1, it was decided, in a case where the appropriating company had sold its right of way to auother company before it had constructed a road thereon, that the sale was valid and the title passed. In Hatch v. Cincinnati and Indiana Railroad Co., 18 Ohio St. 92, a right of way appropriated by a canal company, for canal purposes, was sold to a railroad company for railroad purposes. The sale was maintained on the ground that the purposes of the condemna *249 tion by the canal company, and the uses to which it was transferred were similiar, to wit, a public highway. The contracting parties to the transfer, having power to contract, special legislation to transfer this species of property was not relied on. The transferability of the right of way was based on the inherent nature of property.
A right of way for public uses, whether held as an easement or in fee, is property, and as such, in the absence of restraining statutes, is transferable. In the cases cited, the right of way was a perpetual easement, but in Malone v. City of Toledo, 34 Ohio St. 541, where the fee of the land condemned for a canal passed under the statute, it was held that the transferee took it discharged from any limitation as to uses. Of course, where the right of way is for a public use, and the right is of the nature of a perpetual easement, the transferee takes it subject to like uses. There is no doubt entertained, so far as I know, as to the correctness of the first proposition.
As to the second proposition, that the transferee of a right of way for railroad purposes is entitled, as against the owner in fee, to all the rights, privileges, and immunities acquired by the appropriation proceedings, it is hardly necessary to say a word. It is of the very essence of the transferability of property that the purchaser should succeed to all the rights of the vendor, where the contract of sale imposes no limitations, and none are imposed by the positive law of the land. It seems to me incredible that the rule should be otherwise, and it is not contended that the positive or statutory law of this state imposes any barrier to the transfer attempted to be made in this case.
The third proposition rests on the principles underlying the second. Of course, a vendor of property, as a general rule, can not vest any right or title in the purchaser which he did not himself possess; but where no conditions or limitations are imposed by the contract of sale, and no rule of law forbids it, the property passes to the purchaser as fully subject to his control and dominion, as it formerly *250 was to the control and dominion of the vendor. These views are elementary.
The fourth proposition, that the right to transfer the entire right of way, with all the privileges acquired by the condemnation, includes the right to permit and license another railroad company to occupy for the use of its road a part of the right of way, appears to me to be logically and mathematically correct, as the whole necessarily includes all its parts. As an abstract proposition this would probably not be gainsaid.
The point of difference which divides the court is, in my opinion, involved in this proposition, but as it is made more patent and circumscribed in the next, I will proceed to it.
Proposition 5. The use of such part by the licensee, in the same manner it could have been used by the licensor, is not an additional burden on the laud for which the owner in foe is entitled to additional compensation.
As I understand the decision, it is based chiefly on the ground that, by the proceedings of condemnation, the only burden imposed on the land condemned was the right to construct and maintain a single railroad, to wit, the road of the appropriating company, and it is claimed that the construction of a railroad track, and its use, by another company, to be operated at the same time as a separate road, is an ádditional burden on the land, and an invasion of the rights of the owner in fee, for which he is entitled to compensation or damages. It is admitted, as I understand, that a successor, by purchase, of the entire interest of the appropriating company, may operate the road constructed by its vendor, and enjoy the right of way to the full extent that it could have been enjoyed or used by such company. It is not denied, as I understand, that the appropriating company or the successor to all its rights may grant to another company a right of way across its own, at right angles or at any other angle, but it is claimed that a grant or license to another company to build a track parallel with its own, and on the same right of way, is in *251 excess of the rights acquired by the judgment of condemnation. The position assumed in the decision is, I think, inconsistent with the foregoing propositions and former adjudications of this court.
■ I admit that any encroachment on lands not embraced in the right of way, by the appropriating company or its successor, would be a violation of the rights of the owner in fee; but by the condemnation the whole of the land embraced in the right of way was devoted to railroad purpose in perpetuity, and full compensation therefor was awarded to the owner in fee. It is true that, at the time these lands were condemned, the law allowed resulting benefits to other lands to be set off agaiust compensation for the land taken and injuries to other lands; but whether the compensation for land appropriated be made by resulting benefits, or in monej’, as is required by the present constitution, makes no difference in the character of the rights acquired by the approjjnating company. In either case, the owner is compensated to the full value of the property takeu. As a result, the use of the entire right of way is appropriated to public purposes. The entire right of way was subject to be occupied by tracks and side-tracks, at the will of the appropriating company, without injury to the rights of fhe owner in fee, whether he contemplated such usé or not. In law, such use was contemplated; such were the burdens for which compensation was made; and if the right of way be transferable, as we lmve shown it is, the transferee, as well as the appropriating company, may construct additional tracks to the full capacity of the right of way, without imposing any additional burden on the land for which the owner iu fee is entitled to additional compensation. This being so, upon what principle of right or of construction can it be said that the owner in fee may claim additional compensation from a licensee of a part of the right of way for an act that would be perfectly j ustifiable if done by the licensor? If it be answered that the statute which authorized the condemnation limited it to the use of the road of the appropriating company, it is sufficient reply to *252 say that it is settled that the limitation referred to does not prevent the transferability of the property in whole or in part.
But it is said that independent of the transferability of the property, the defendant in error has placed burdens on the land in excess of those which the appropriating company acquired the right to do ; that is to say, the transportation of trains, passengers, and freight of the defendant, is in excess of the trains, passengers, [and freight to which the right of way was appropriated. This objection applies equally to transportation over the track of the old company, as over the track constructed by the defendant.
In Hatch’s case, supra, p. 120, it is said : “ The exercise of the right of eminent domain is primarily and mediately the act of the state; and corporations to which it has been delegated and by which it is immediately exercised, are but instrumentalities of the state, although they may have, and generally do have, corporate interests intermingled with, and growing out of, the exercise of this sovereign prerogative of the state.” The condemnation of private property for a public highway is the act of the state, subject to the private rights of the corporation to which the power was delegated. These private rights are granted by the state'in consideration that the corporation compensates the owner of the land for the right of way. The highway is dedicated by the state, and neither the corporation nor the owner in fee can divert the use., The owner of the fee can not, because he has been compensated in full for his interest in the land. The corporation can not, because it is the creature and agent of the state. The public use is equal to the capacity of the light of way. It is no concern of the owner of the fee what instrumentalities the state employs or permits to aid in utilizing the uses of the public highway. It may limit the use to a single corporation or may employ many corporations. This question concerns only the state and the appropriating company, and the latter only to the extent it has acquired private rights in connection with the public rights, by reason of having made *253 compensation to the owner of the land for the right of way.
The defendant has obtained the consent of the appropriating company, and it has obtained the tacit, if not express consent of the state, and, as we have said, the owner of the fee, having received full compensation, has no right to complain. In other words, if the owner has received full compeusatson for the land, what further compensation is he entitled to for this supposed additional burden on the land, embraced in the right of way ?
These views are consistent with, and indeed underlie the policy of the state as expressed by its legislation from its earliest history in railroading. On the 3d of March, 1851, probably before the judgment of condemnation was entered in favor of Toledo, Norwalk and Cleveland Railroad Company, the predecessor of defendant in error, against Oliver, from whom plaintiffs derive their title, an act was passed which provided that “ any railroad company organized in pursuance of law may lease or purchase any part or all of any railroad constructed by any other company, if said companies’ lines of road are continuous or connected as aforesaid, upon such terms and conditions as may be agreed upon between said companies respectively. Or any two or more railroad companies, whose lines are so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote the objects for-which they were created.”
On March 19, 1869, it was provided (66 Ohio L. 3'2) that, “any railroad company organized in pursuance of law, either within this or any other state, may lease or purchase any part or all of any railroad, the whole or a part of which is in this state, and constructed, owned, or leased by any other company, if said companies’ lines of said road are continuous or connected at a point either within or without this state, upon such terms and conditions as may be agreed on between said companies respectively; or any two or more railroad companies whose lines are so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote *254 the objects for which they were created.” Such was the policy of the state, as expressed by its legislation in force at the time the defendant in error acquired its right to use a part of the right of way appropriated by the Toledo, Nor-walk and Cleveland Company. It is true that in this legislation many restrictions are imposed for the benefit of stockholders, of the state, and of the general public. These parties, however, have made no complaint against defendant in error. The only complaint is by plaintiffs in error, for whose benefit no provision is found in these statutes. Indeed, the general assembly has at all times assumed that the owner in fee, who had received full compensation for. the perpetual use of the right of way, had no such interest left in the land as required protection against what plaintiffs in error are pleased to call “additional burdens.”
By additional burdens are meant those which were not contemplated or compensated for at the time of the appropriation. We have shown full compensation was made for the use of the entire land embraced in the right of way for all time to come, subject, to be sure, to a reversion in case of abandonment or forfeiture. There has been no abandonment — no intention to abandon. Hatch’s case, 18 Ohio St. 120. Forfeiture comes by judgment — there has been no judgment. The transfer and use by the transferee for railroad purposes was contemplated. The defendant in error has subjected the right of way to no use or mode of use to which it was not subject by its predecessors within the contemplation of the parties at the time of condemnation. No trespass on land outside of the right of way is claimed. No right of transit from one side of the right of way to the other has been impaired. Indeed, no right of such transit was reserved by the owner in fee. No such right exists in the plaintiffs. The lands on the opposite sides of the right of way were severed by the'original condemnation. All communication was cut off. This burden or inconvenience was contemplated and paid for at the time the right of way was appropriated. There has been no burden outside of the land appropriated, or on adjacent land, which was not contemplated by the parties at the time of condem *255 nation, and which, in contemplation of law, was not paid for to the full extent of damages resulting thereto.
It appears to me the summing up of defendant’s counsel is unanswerable. He reasons thus: “If the additional burden exists, it must be in respect to the land taken, or in respect to the adjoining land. It does not exist in respect to the land taken, for such land was fully paid for when originally condemned. On no other theory than ‘ full compensation to the owner ’ could land have been taken under the constitution of 1802; moreover, the easement acquired by the Lake Shore Company’s predecessor was perpetual. The easement thus acquired is transferable, and it is reasonable that when land has been taken by the state for the purposes of a highway, and has been fully paid for, and the easement so acquired is perpetual and exclusive against the owner, the state should be permitted to use as many instrumentalities to carry out the original purpose as public convenience or necessity may suggest. It is reasonable, because the purpose for which the land was taken is not changed; because all that can be done through all the instrumentalities selected by the state is no more than could have been done by the single company originally concerned; and because the owner is not injured by change of the medium through which the state accomplishes its purpose, except in imagination, for which imaginary injury the law gives no redress. The additional burden does not exist in respect to the adjoining laud, for the reason that not an inch of it is taken — not an inch of it is touched or excavated, and no right-was reserved to the adjoining land of access to, joint use of, or crossing over the strip that was condemned.”
The sixth proposition, that the quantity of land embraced in the right of way was fixed and determined between the parties, by the judgment of condemnation, is too plain for discussion. For the. whole of the land so embraced, compensation in full has been made, and it is unreasonable that the owner in fee should retain both the price paid and the land, or any part of it. If the land condemned exceeded *256 the quantity necessary for the use of the road, but no objection on that accouut was made at the time, the judgment of condemnation concludes the owner in fee. If the power to condemn be abused in this inspect, the right to complain after condemnation, in fact, is in the state, not in the party who acquiesced in the act, and received compensation in full.
The seventh and last proposition is, that the non-user of portions of the right of way at the sides of the track of a railroad, is not an abandonment thereof to the owner in fee.
It was truly said in Hatch’s case, supra, that on a question of abandonment, the intention of the party is an element for consideration. No intention to abandon can be inferred against the defendant’s grantor from such a nonuser as that above named. Indeed, such non-user is merely technical and temporary. It is no evidence of an abandonment. Whenever circumstances require, the actual use of the whole right of way will become a necessity. It is a mistake to say that no part of the right of way is in use, except that covered by the track of the road. The exigencies of railroading may, at any time, require the occupation of ground at the sides of the track which has been unused for years.
It may be needed for repairs, for additional tracks, for fencing the road, etc. The law requires all railroads to be fenced. Where are the fences to be constructed and maintained? How much ground at the sides of the track is needed, for that purpose ? ■
Again, in condemning land for the purposes of a railroad, in a growing country like this, an increase in travel and traffic should be contemplated and provided for; the necessities of the present do not circumscribe the power of eminent domain. But if the grant of this power should be abused, as we have said before, after a judgment of appropriation, the power of the state should intervene to correct the evil. The present non-user of the whole of the land condemned is not equivalent to an abandonment of *257 the whole or any part thereof. But whatever the remedy may be, it is clear to my mind, that the claim of abandonment can not be sustained by the owner in fee.
Johnson, C. J., also dissents.